# UNITED STATES DISTRICT COURT

for the

District of Oregon

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

A seized digital located at the ATF Eugene Field Office
as described in Attachment A

)
)
)
)
)
)
)

Case No. 6:26-mc-374

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A seized digital located at the ATF Eugene Field Office as described in Attachment A hereto.

located in the _____ District of _____Oregon_____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |
| 18 U.S.C. § 922(j) | Possession of a stolen firearm |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

By phone pursuant to Fed. R. Crim. P. 4.1
_____
*Applicant's signature*

Kathryn Holka, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____Telephone at __5:04 p.m._____ *(specify reliable electronic means)*.

Date: _____04/07/2026_____

*Amy E. Potter*
*Judge's signature*

City and state:  Eugene, Oregon

Amy E. Potter, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:           AFFIDAVIT OF KATHRYN HOLKA

**Affidavit in Support of an Application Under Rule 41
for a Warrant to Search and Seize Evidence Including Digital Evidence**

I, Kathryn Holka, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives and have been since October 2024.  My current assignment is in the Eugene Field Office.  My training and experience includes graduating from the Special Agent Basic Training Program at the ATF National Academy and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center. I have conducted and assisted multiple investigations into the unlawful possession and use of firearms, theft of firearms from Federal Firearm Licensed Dealers, the possession and distribution of controlled substances, and trafficking cases associated with firearm and narcotic offenses.  During my employment as an ATF Special Agent, I have received specialized training regarding, and have personally participated in, various types of investigative activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing and interviewing of informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) and drug trafficking cases.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search and examination of a Black Google cellular telephone in a red case (hereinafter "Device"), which is currently stored, in law enforcement possession, in the Evidence room at the ATF Eugene Office located at 874

**Page 1 – Affidavit of Kathryn Holka**

Seneca Rd Eugene Oregon. The device is assigned evidence item number 19 under case number 26-02547, as described in Attachment A hereto, and the extraction of electronically stored information from the Device, as described in Attachment B hereto.  As set forth below, I have probable cause to believe and do believe that the items set forth in Attachment B constitute evidence  and instrumentalities of violations of 18 U.S.C § 922(g)(1) and 18 U.S.C § 922(j) (the Target Offenses).

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

**Applicable Law**

4.      Title 18 U.S.C § 922(g)(1) provides that it shall be unlawful for any person who, knowing that they have  been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to receive, possess, or transport any firearm or ammunition in or affecting interstate or foreign commerce.

5.      Title 18 U.S.C § 922(j) provides that it shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or

**Page 2 – Affidavit of Kathryn Holka**

foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

### Statement of Probable Cause

6.　　The United States, including the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Eugene Field Office, is conducting a criminal investigation into Deckard, a convicted felon, who committed federal violations of firearms offenses.

7.　　Beginning in the month of November 2025, ATF initiated a series of undercover purchases of firearms involving an ATF Undercover Agent (UCA) and/or an ATF Confidential Information (CI). All the undercover purchases were audio and video recorded. The two controlled buys for which charges were sought and obtained took place on November 19, 2025, and January 28, 2026. Prior to each controlled buy, Deckard used his phone to send messages to the ATF UCA and ATF CI. The messages were regarding firearms Deckard could potentially sell, prices, and included digital images of firearms. The ATF CI would contact Deckard through his Facebook account. Once the ATF UCA was introduced to Deckard, the ATF CI provided Deckard's phone number (458-710-8556) to the ATF UCA. Deckard used this phone number to keep in contact with the ATF UCA for several weeks. The photograph shown here was taken on January 28, 2026 during an undercover purchase of firearms, and shows Deckard holding a cellular telephone, which is the Device which is the subject of the requested search warrant.



**Page 3 – Affidavit of Kathryn Holka**

8.      On March 30, 2026, Charles Deckard was arrested in Coos County, Oregon, for Felon in Possession of a firearm and Possession of a stolen firearm. Deckard was searched incident to arrest, and a Black Google Smart phone with a red case (Device) was seized from his person and placed in a faraday evidence bag. Deckard did not have any other digital devices on his person

9.      On March 30, 2026, The Honorable Judge Amy E. Potter, United States Magistrate Judge for the District of Oregon, granted a complaint and arrest warrant for Deckard. The complaint and affidavit in support of the complaint  is attached here as Exhibit 1, and provides the background and probable cause for the offenses, and supports probable cause that Deckard used the Device in the course of committing the Target Offenses and that the search of the Device will reveal evidence and instrumentalities of the Target Offenses.

10.      The Device is currently in storage at the ATF Eugene Field Office, located at 874 Seneca Rd. Eugene, Oregon 97402. In my training and experience, I know that the Device has been stored in a manner which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF. I believe the search of his phone will reveal evidence of the Target offenses, including: communications with the UCA and CI, images and/or videos of firearms, discussions of obtaining and selling firearms and ammunition or efforts to do so, location data, user attribution data for the Device, and information regarding others involved with Deckard in the theft, possession, and sale of firearms.

11.      Based on my training, speaking with Senior ATF special agents, and experience, I use the following technical terms to convey the following meanings:

 **Page 4 – Affidavit of Kathryn Holka**

a.  *Wireless telephone*.  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  *Digital camera*.  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  *Portable media player*.  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or

**Page 5 – Affidavit of Kathryn Holka**

photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. *GPS*.  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains historical records of the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated as "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. *IP address*.  An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers

**Page 6 – Affidavit of Kathryn Holka**

control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      f. *Internet*. The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

12. Based on my training, experience, and research I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things have been viewed via the internet are typically stored for some period of time on the device. This information can be recovered with forensic tools. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the Device because, based on my knowledge, training, and experience, I know:

      a. Data on the Device can provide evidence of a file that was once on the Device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

**Page 7 – Affidavit of Kathryn Holka**

b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the device at a relevant time. Further, forensic evidence on a device can show how and when the device was accessed or used. Such "timeline" information allows the forensic analyst and investigators to understand the chronological context of access, use, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the device user. Last, forensic evidence on a device may provide relevant insight into the device user's state of mind as it relates to the offense under investigation. For example, information on a device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the device or password protecting or encrypting such evidence in an effort to conceal it from law enforcement), or knowledge that certain information is stored on a computer (e.g., logs indicating that the incriminating information was accessed with a particular program).

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a

**Page 8 – Affidavit of Kathryn Holka**

storage medium necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

13. *Nature of Examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B),the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

14. The review of the Device will be performed within a reasonable amount of time not to exceed 365 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 365-day period from the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension from the Court.

**Page 9 – Affidavit of Kathryn Holka**

15.     If at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Device or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.  Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

16.     If an examination is conducted, and it is determined that the Device does not contain any data falling within the ambit of the warrant, the government will return the Device to its owner within a reasonable period of time following the search and will seal any image of the Device, absent further authorization from the Court.

17.     If the Device contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Device as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Device and/or the data contained therein.

18.     The government will retain a forensic image of the Device for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Page 10 – Affidavit of Kathryn Holka**

19.     *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Conclusion

20.     Based on the foregoing, I have probable cause to believe, and I do believe, that the Device described in Attachment A contains evidence and instrumentalities of violations of 18 U.S.C § 922(g)(1) and 18 U.S.C. § 922(j), as set forth in Attachment B. I therefore request that the Court issue a warrant authorizing a search of the Device described in A for the items listed in Attachment B and the Seizure and examination of any such items found.

21.     Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Jeffrey Sweet. I was informed that it is AUSA Sweet's opinion that the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant

*By phone pursuant to Fed. R. Crim. P. 4.1*
Kathryn Holka
Special Agent ATF

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at <u>5:04 p.m.</u> a.m./p.m. on <u>April 7, 2026</u>.

_____
Amy E. Potter
United States Magistrate Judge

**Page 11 – Affidavit of Kathryn Holka**

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| CHARLES TODD DECKARD | ) | |
| | ) | 6:26-mj-81 |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

Certified to be a true and correct copy of original filed in this District
Dated: **03/31/2026**
**MELISSA AUBIN, Clerk of Court**
U.S. District Court of Oregon
By: **s/E. Toles**
Pages _1_ Through _8_

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___11-19-2025 and 1-26-26___ in the county of ___Coos___ in the ___ District of ___Oregon___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(g)(1) | Possession of a Firearm by a Prohibited Person (Both dates) |
| 18 U.S.C § 922(j) | Possession of a Stolen Firearm (January 26, 2026 only) |

This criminal complaint is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

By phone pursuant to Fed. R. Crim. P. 4.1
*Complainant's signature*

Kathryn Holka, ATF Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 5:05 p.m. a.m./p.m.

Date: March 30, 2026

*Judge's signature*

City and state: ___Eugene, Oregon___

Amy E. Potter, U.S. Magistrate Judge
*Printed name and title*

GOVERNMENT
EXHIBIT
1

Government Exhibit 1
Page 1 of 8

DISTRICT OF OREGON, ss:          AFFIDAVIT OF KATHRYN HOLKA

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Kathryn Holka, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives and have been since October 2024.  My current assignment is in the Eugene Field Office.  My training and experience includes graduating from the Special Agent Basic Training Program at the ATF National Academy and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center. I have conducted and assisted multiple investigations into the unlawful possession and use of firearms, theft of firearms from Federal Firearm Licensed Dealers, the possession and distribution of controlled substances, and trafficking cases associated with firearm and narcotic offenses.  During my employment as an ATF Special Agent, I have received specialized training regarding, and have personally participated in, various types of investigative activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing and interviewing of informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) and drug trafficking cases.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Charles Todd Deckard for Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C § 922(g)(1) and for Possession of a Stolen Firearm in violation of 18 U.S.C § 922(j) (the

**Page 1 – Affidavit of Kathryn Holka**

Target Offenses).  As set forth below, there is probable cause to believe, and I do believe, that Charles Todd Deckard committed the Target Offenses.

3.       This complaint is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.       Title 18 U.S.C § 922(g)(1) provides that it shall be unlawful for any person who, knowing that they have  been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to receive, possess, or transport any firearm or ammunition in or affecting interstate or foreign commerce.

5.       Title 18 U.S.C § 922(j) provides that it shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

## Statement of Probable Cause

6.       This Affidavit is made in support of a Criminal Complaint seeking the issuance of

**Page 2 – Affidavit of Kathryn Holka**

an Arrest Warrant charging Charles Deckard (hereinafter "Deckard") with violations of Title 18, United States Code, Sections 922(g)(1) and 922(j).

7.    The United States, including the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Eugene Field Office, is conducting a criminal investigation into Deckard, a convicted felon, who is committing federal violations of firearms offenses.

8.    Beginning in the month of November 2025, ATF initiated a series of undercover purchases of evidence, involving an ATF Undercover Agent (UCA) and an ATF Confidential Information (CI). All the undercover purchases were audio and video recorded. The two controlled buys for which charges are being sought took place on November 19, 2025, and January 28, 2026. By way of background, a November 6, 2025, controlled buy with just the CI is also summarized.

9.    The affiant reviewed the CI's criminal history. The CI has a recent conviction for a driving offense and eluding police, and is on probation. The CI also has prior convictions for multiple driving offenses, failure to appear, and multiple convictions for driving under the influence of alcohol or controlled substances. In addition to arrests for the above offenses, the CI has arrests which include: failure to appear, driving offenses, DUI, unauthorized use of a vehicle and a weapons offense. The CI is cooperating with the ATF for monetary consideration.

<u>November 6, 2025 Controlled Purchase by CI</u>

10.    On November 6, 2025, at the direction of ATF agents, the CI purchased a Springfield Armory Hellcat, 9mm Pistol and a Springfield Armory XDS 9mm pistol. The CI purchased them from a female, whose identity is known to the affiant, and Deckard, in North Bend, Oregon. The UCA was not involved with this transaction. Leading up to the transaction

**Page 3 – Affidavit of Kathryn Holka**

the CI communicated with the female, who, with Deckard, was attempting to sell two pistols. In messages with the female regarding the price, she wrote, "He said yes but 1300 for both". The female also messaged the CI that the firearms were "quite warm" and "they are cops guns…which makes it just taste sweeter". Based on my training and speaking with senior ATF Special Agents I know that when items are referenced as being "hot" or "warm" the item was most likely stolen and may draw attention from law enforcement. The firearms were confirmed as being reported stolen, but were not law enforcement guns. Ultimately, the price of $1100 was agreed upon, and Deckard and the female arrived at the meeting location in a car and met the CI. Deckard was driving, and the female handed the CI the firearms and said she left the slides open. The transaction was audio and video recorded. Law enforcement queried the firearms and determined that both of the purchased firearms were previously reported stolen.

November 19, 2025, Controlled Purchase by CI and UCA

11.     On November 9, 2026, Deckard informed the CI that he had a rifle for sale. On November 19, 2025, an ATF UCA and the CI drove to Deckard's trailer on Boat Basin Road, in Coos Bay, Oregon, to purchase a firearm. Prior to the transaction, the CI had said that he was buying guns for another person, and the UCA was introduced to Deckard as that person. Deckard was standing outside when the CI and UCA drove up, and the CI gave Deckard a bag to put the firearm in. Deckard went into his trailer and returned with a rifle in the bag. Deckard entered the UCA's vehicle and put the rifle on the floorboard. Deckard said the firearm was a .30-06. The CI paid Deckard $600 in ATF funds and the transaction was audio and video recorded. The firearm was examined, and is a Winchester 70 .30-06 caliber rifle.

**Page 4 – Affidavit of Kathryn Holka**

<u>January 28, 2026, Controlled Purchase by CI and UCA</u>

12.     On January 26, 2026, Deckard contacted the CI regarding three firearms and ammunition that he had for sale. On January 28, 2026, the UCA and the CI went to Deckard's trailer located on Boat Basin Rd in Coos Bay Oregon. Deckard entered the UCA's vehicle and handed the CI a Hi-point C9 9mm pistol and a Heritage Rough Rider .22 caliber revolver, along with ammunition. Deckard stated that the third firearm was in his vehicle at a different location that they would need to drive him to. The UCA agreed, and drove to the second location in Coos Bay, Oregon. Deckard exited the UCA's vehicle and retrieved a Savage Arms model 64 .22 caliber rifle from a van and handed it to the CI. The CI provided Deckard with $550 in pre-recorded ATF funds in exchange for the firearms. During the transaction Deckard stated that he obtained the Heritage Rough Rider revolver in a "lick". Based on my training and speaking with Senior ATF Special Agents, I know that a "lick" is a term commonly used in reference to a burglary, theft, or robbery. The transaction was audio and video recorded.

13.     Law enforcement queried the firearms and determined from a Coos County Sheriff's Office report that the Savage rifle was reported stolen 3 days prior to the transaction.

14.     An ATF agent trained in making interstate nexus determinations informed me that each of the purchased firearms mentioned in this affidavit was manufactured outside the state of Oregon.

<u>Deckard is a Convicted Felon</u>

15.     The affiant received and reviewed court records of Deckard's convictions, and he is a convicted felon. His felony convictions include:

**Page 5 – Affidavit of Kathryn Holka**

- Possession of controlled substance for sale, in the Superior Court of California in the County of San Bernardino, Case No. FVI21000047, on or about March 25, 2021;

- Attempted auto theft, in the Superior Court of California in the County of San Bernardino, Case No. FVI1000644, on or about March 13, 2019;

- Attempted Burglary in the 2nd degree, in the Superior Court of California in the County of San Bernardino, Case No. 16CR-011725, on or about April 26, 2016.

The conviction documents show that he was sentenced to prison for each of the above offenses.

16.     On March 30, 2026, Deckard was arrested by ATF.

17.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Jeffrey Sweet, and AUSA Sweet advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

**Page 6 – Affidavit of Kathryn Holka**

**Conclusion**

18.     Based on the foregoing, I have probable cause to believe, and I do believe, that Charles Todd Deckard committed the crime of possession of a firearm by a prohibited person in violation of 18 U.S.C § 922(g)(1) and possession of a stolen firearm in violation of 18 U.S.C. § 922(j). I therefore request that the Court issue a criminal complaint and arrest warrant for Charles Todd Deckard.

*By phone pursuant to Fed. R. Crim. P. 4.1*
Kathryn Holka
Special Agent ATF

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  5:05 p.m.
a.m./p.m. on  March 30, 2026  .

_____
AMY E. POTTER
United States Magistrate Judge

**Page 7 – Affidavit of Kathryn Holka**

## ATTACHMENT A

### Property to Be Searched

The property to be searched is a Black Google cellular telephone in a red case. The device is assigned item number 19, under case number 26-02547, and is currently located on the premises of the ATF Eugene Field Office, 874 Seneca Rd. Eugene, Oregon 97402, in the Evidence room. Photographs of the Device follow:



**Attachment A**                                    **USAO Version Rev. July 2015**

**ATTACHMENT B**

**Items to Be Seized**

1.      All records on the Device described in Attachment A that relate to violations of 18 U.S.C § 922(g)(1) and 18 U.S.C § 922(j) and involve Charles Deckard since November 2025, including:

a.      Images and videos of firearms, firearms accessories, and ammunition.

b.      Communications with the UCA and the CI regarding the Target Offenses.

c.      Communications with coconspirators or other individuals regarding the theft, possession or sale of firearms and stolen firearms.

d.      Information regarding firearms customers or potential customers and related identifying information.

e.      Types, amounts, and prices of firearms trafficked as well as dates, places, and amounts of specific transactions.

f.      Information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information).

g.      Information recording Deckard's schedule or travel from November 1, 2025 to the present.

h.      Financial records and records of the disposition of proceeds from the sale of firearms.

i.      Records and information, including notes, writings, voicemails, calendar entries and social media posts regarding Deckard's possession, efforts to obtain, and the sale of firearms and ammunition, and his motivation for doing so.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.    Records evidencing the use of the Internet, including:

a.    Records of Internet Protocol addresses used.

b.    Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

c.    Records of data storage accounts and use of data storage accounts.

4.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Search Procedure**

5.    The examination of the Device may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

6.    The review of the Device will be performed within a reasonable amount of time not to exceed 365 days from the date of execution of the warrant.  If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 365-day period from the date of execution of the warrant.  If the

**Attachment B**                                                                      **Page 2**

government needs additional time to complete this review, it may seek an extension from the Court.

7.      If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Device or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.  Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

8.      If an examination is conducted, and it is determined that the Device does not contain any data falling within the ambit of the warrant, the government will return the Device to its owner within a reasonable period of time following the search and will seal any image of the Device, absent further authorization from the Court.

9.      If the Device contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Device as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Device and/or the data contained therein.

10.      The government will retain a forensic image of the Device for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Attachment B**                                                                                              **Page 3**